NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**SEAN M. ENSLEY,**
*Petitioner*

**v.**

**PUGET SOUND NAVAL SHIPYARD AND INTERMEDIATE MAINTENANCE FACILITY,**
*Respondent*

---

2021-2082

---

Petition for review of an arbitrator's decision by Lawrence E. Little.

---

Decided:  December 8, 2021

---

SEAN MICHAEL ENSLEY, Bremerton, WA, pro se.

LIRIDONA SINANI, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent.  Also represented by BRIAN M. BOYNTON, MARTIN F. HOCKEY, JR., FRANKLIN E. WHITE, JR.

---

Before LOURIE, HUGHES, and CUNNINGHAM, *Circuit Judges*.

PER CURIAM.

Sean M. Ensley appeals from the decision of an arbitrator sustaining his removal from the Puget Sound Naval Shipyard and Intermediate Maintenance Facility ("PSNS"). *Bremerton Metal Trades Council (Union) (Sean Ensley) v. Puget Sound Naval Shipyard & Intermediate Maintenance Facility (Employer)*, (May 20, 2021), SAppx 1–32.[1] Because the arbitrator's decision was supported by substantial evidence, we *affirm*.

## BACKGROUND

Ensley began working as a welder for PSNS in 2013. SAppx 230. In 2020, several PSNS employees complained to their supervisor regarding Ensley's behavior. They specifically alleged that he touched them without consent and made inappropriate comments. SAppx 154–61, 561.

In light of those complaints, a special team began to investigate. SAppx 173. After the team interviewed several witnesses, it determined that Ensley had acted inappropriately toward his co-workers. SAppx 621. As a result, Ensley's superintendent proposed removing him based on a charge of Inappropriate Conduct supported by six specifications. SAppx 471–76. The specifications, as provided in the proposed removal letter, are as follows:

> **Specification 1**: In or around July 2015 through October 2015, you asked a female employee to walk up the stairs in front of you and you smacked her on her bottom and said words to the effect of, "[y]our jeans look tighter around your butt when you climb the stairs," "[y]our assets look good in your jeans," and "I miss those tight skinny jeans you had, you looked so good in those."

---

[1]    "SAppx" refers to the supplemental appendix filed by the government.

**Specification 2**:  In or around July 2015, you texted a female employee and asked her to "[c]ome take a bubble bath" or words to that effect.

**Specification 3**:  Around approximately the summer of 2018, you and a female employee were walking to the smoke shack when you told her "I had a wet dream about you" or words to that effect.

**Specification 4**:  Around approximately the end of 2018, you walked up to a female employee and grabbed her ponytail and yanked it backward[].

**Specification 5**:  In or around approximately December 2019, while at work, you told a female employee words to the effect of "you look cute in your hat."

**Specification 6**:  Between approximately October and December 2013, while at work, you asked a female employee, "[w]hen are you going to leave your boyfriend and date me?" or words to that effect.

*Id.*

After receiving the letter, Ensley submitted a response to the deciding official disputing several of the allegations. However, the deciding official sustained PSNS's decision to remove Ensley.  SAppx 481–83.  Consequently, Ensley invoked arbitration pursuant to his rights under the union's collective bargaining agreement.  5 U.S.C. § 7121(e)(1).[2]

After the arbitrator held a hearing, he upheld PSNS's removal decision.  First, he found that there was "extensive" corroborating evidence that Ensley had engaged in problematic conduct.  SAppx 9–20, 31–32.  Second, he

---

[2]    Under 5 U.S.C. § 7121(e)(1), a federal employee may appeal his removal to the Merit Systems Protection Board ("the Board") or invoke arbitration.

determined that Ensley's conduct adversely affected PSNS's work environment. SAppx 29–31. Third, he determined that the removal penalty was reasonable in light of Ensley's "egregious, inappropriate, and repetitive" conduct. SAppx 27, 29–32.

Ensley appealed to this court. We have jurisdiction to review an arbitrator's decision pursuant to 5 U.S.C. §§ 7121(f), 7703, and 28 U.S.C. § 1295(a)(9).

## DISCUSSION

We review the decision of an arbitrator "in the same manner and under the same conditions as if the matter had been decided by the [Merit Systems Protection] Board." 5 U.S.C. § 7121(f). Accordingly, we must set aside the decision of the arbitrator if it was "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c).

We review the arbitrator's "legal conclusions de novo and its fact findings for substantial evidence." *Smith v. Gen. Servs. Admin.*, 930 F.3d 1359, 1364 (Fed. Cir. 2019) (citing *Campbell v. Merit Sys. Prot. Bd.*, 27 F.3d 1560, 1564 (Fed. Cir. 1994)). A finding is supported by substantial evidence if a reasonable mind might accept the evidence to support the finding. *See Consol. Edison Co. of New York v. NLRB*, 305 U.S. 197, 229 (1938).

Ensley raises four arguments on appeal. First, he challenges the arbitrator's determination that he received sufficient notice of the charges against him. Second, he challenges the arbitrator's finding that he committed the alleged conduct. Third, he challenges the arbitrator's finding that his conduct had a nexus to PSNS's ability to function efficiently. Finally, he contends that the arbitrator applied the incorrect law. We address each argument in turn.

I

Ensley first argues that PSNS's charge in the proposed removal letter was "incredibly vague," which deprived him of notice and an opportunity to defend himself. Appellant's Informal Br. at 2. The government responds that PSNS described the charged conduct in sufficient detail.

We agree with the government that PSNS's notice letter was sufficiently detailed. An agency's notice of proposed removal is sufficient if "it apprises the employee of the nature of the charges 'in sufficient detail to allow the employee to make an informed reply.'" *King v. Alston*, 75 F.3d 657, 661 (Fed. Cir. 1996) (quoting *Brook v. Corrado*, 999 F.2d 523, 526 (Fed. Cir. 1993)). Here, PSNS satisfied that requirement. Specifically, PSNS's proposed removal letter explained that Ensley was charged with Inappropriate Conduct. It then described each element of that conduct in detail, citing dates, actions, and specific statements (as shown above). SAppx 471–76. And, as the record shows, Ensley had no trouble understanding the charge or defending himself. Indeed, in his response to the letter, he addressed several of the allegations in detail. *See, e.g.*, SAppx 740–46. Accordingly, Ensley's argument is unavailing.

II

Next, Ensley asserts that the arbitrator improperly assumed that he committed the alleged acts, without considering contrary evidence. The government responds that the arbitrator's decision was supported by substantial evidence. According to the government, the arbitrator carefully evaluated Ensley's testimony and found that it was outweighed by the extensive, credible testimony of multiple other witnesses.

We agree with the government that the arbitrator's decision was supported by substantial evidence.

First, the arbitrator did not simply assume that the charged conduct occurred. Rather, he carefully considered the evidence and found that it overwhelmingly weighed against Ensley. *See* SAppx 9–20, 31–32. Specifically, the arbitrator explained that multiple witnesses "divulged their own uncomfortable experiences with [Ensley]," thus corroborating the allegations and establishing that he engaged in an inappropriate "pattern of behavior." SAppx 31–32. That pattern involved "placing multiple women in positions where they felt uncomfortable, and then taking advantage of them in workplace moments where he found himself alone with them." *Id.* The arbitrator also pointed out that, although Ensley supplied unsworn witness statements attesting to his good conduct, he did not provide any witnesses at the hearing to refute the Inappropriate Conduct charge. SAppx 32. According to the arbitrator, "th[a]t absence" of witness testimony was "significant." *Id.* We agree.

Second, even more fatal to Ensley's argument, he admitted to some of the conduct. For example, in his signed statement to the investigator, his oral reply, and his hearing testimony, Ensley conceded that he texted one of his coworkers and asked her to "come take a bubble bath," as alleged in specification 2. SAppx 205, 235, 275–76. He similarly conceded to the deciding official that he asked a coworker, "[w]hen are you going to leave your boyfriend and date me?" as alleged in specification 6. SAppx 208, 277. Accordingly, substantial evidence supports the arbitrator's finding that the conduct occurred.

## III

Ensley next contends that, even if the charged conduct occurred, the arbitrator improperly found that it had a nexus to PSNS's ability to function efficiently, as required by 5 U.S.C. § 7513(a); *see also Doe v. Dep't of Justice*, 565 F.3d 1375, 1379 (Fed. Cir. 2009) (citing *Brown v. Dep't of the Navy*, 229 F.3d 1356, 1358 (Fed. Cir. 2000)) (The agency

must establish "a nexus between the employee's misconduct and the work of the agency, *i.e.*, the agency's performance of its functions.").

We disagree with Ensley. The arbitrator evaluated the evidence and reasonably found that it supported a nexus between Ensley's conduct and PSNS's performance. SAppx 29–31. As the arbitrator explained, multiple witnesses testified that Ensley's conduct adversely affected their ability to work efficiently. For example, one witness testified that she felt "uncomfortable" at work "all the time." SAppx 24, 30. Another witness felt compelled to wear men's clothing in order to protect herself from Ensley's advances. *Id.* Yet another witness testified that she felt "vulnerable, weak, and really uncomfortable." *Id.* That evidence was more than sufficient to establish a nexus.

Still, Ensley contends that there can be no nexus because his alleged conduct occurred outside of work hours. His argument is not persuasive. First, Ensley does not rebut the extensive evidence that his conduct occurred while at work. Second, even assuming that his conduct occurred outside of work, substantial evidence supports the arbitrator's nexus determination. "[A]s long as the agency can prove that the removal of [the employee] promoted the efficiency of the service . . . nothing prevents [it] from relying upon off-duty behavior." *Weekes v. Dep't of Homeland Sec.*, 351 F. App'x 442, 445 (Fed. Cir. 2009) (citing *Brown v. Dep't of the Navy*, 229 F.3d 1356, 1361 (Fed. Cir. 2000)); *Allred v. Dep't of Health & Human Servs.*, 786 F.2d 1128, 1130 (Fed. Cir. 1986). Such is the case here. As explained above, Ensley's behavior affected his co-workers' ability to work efficiently *during* work hours, thus establishing a nexus.

IV

Finally, Ensley asserts that the arbitrator committed two legal errors. First, Ensley argues that the arbitrator

incorrectly applied state law.  Second, Ensley contends that the arbitrator should have required PSNS to prove that his conduct violated Title VII of the Civil Rights Act.  We address each argument in turn.

First, as an initial matter, Ensley is correct that the arbitrator erred in citing state law.  An arbitrator must apply the "same substantive standards" as the Board.  *Cornelius v. Nutt*, 472 U.S. 648, 652 (1985).  Here, the Board would have considered federal law rather than state law in evaluating Ensley's removal.  However, because the arbitrator's citation of state law was either harmless or extraneous, we decline to reverse his determination.  For example, the arbitrator explained that, under state law, he must consider whether Ensley's conduct was simply an "action[] of camaraderie" (subsequently concluding that it was not).  SAppx 28.  Ensley does not explain how that extraneous consideration was prejudicial or affected the outcome of the decision.  Similarly, the arbitrator, citing state law, explained that he must evaluate "the case as a whole in determining whether or not the disciplinary action taken was appropriate."  SAppx 27.  Again, Ensley does not explain how the arbitrator's consideration of the case "as a whole" was prejudicial.

Second, we disagree with Ensley's argument regarding Title VII.  PSNS was not required to prove the elements of a Title VII violation because it did not charge Ensley with violating that law.  Rather, it charged him with committing Inappropriate Conduct.  SAppx 471.  Because Ensley does not explain the relevance of Title VII here, we reject his argument.

In summary, substantial evidence supports the arbitrator's determination that Ensley received sufficient notice of the charge against him, that he engaged in inappropriate conduct, and that the conduct affected PSNS's ability to operate efficiently.

CONCLUSION

We have considered Ensley's remaining arguments but find them unpersuasive.  For the foregoing reasons, the decision of the arbitrator is *affirmed*.

**AFFIRMED**

COSTS

No costs.